**Shawn MELTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 92A04–9110–CR–335.**

Court of Appeals of Indiana,
Fourth District.

Aug. 11, 1992.

Transfer Denied Sept. 30, 1992.

Kurt Bentley Grimm, Grimm & Grimm, Auburn, for appellant-defendant.

Linley E. Pearson, Atty. Gen., of Indiana Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Shawn Melton appeals his conviction for operating a vehicle with ten-hundredths (.10%), or more, by weight, of alcohol in his blood, a class C misdemeanor. IND.CODE 9–11–2–1.[1]

We reverse.

Melton presents one issue for our review:
    whether the evidence was sufficient to sustain his conviction.

On April 6, 1991, at approximately 12:30 a.m., Churubusco City police officer Tony Helfrich observed a red pickup truck driving with its lights off. After stopping the truck, the officer asked the driver why the truck lights were turned off. Melton, the driver, replied, "I don't want to blind the car in front of me." No cars were, in fact, in front of Melton. The officer detected an alcoholic odor coming from Melton. The officer then informed him of the implied consent law and secured his consent to take a chemical blood test for intoxication.

The officer transported Melton to the Whitley County Hospital where he was given the requested blood test. Van Slucher, the medical technologist administering Melton's blood test, reduced Melton's blood to plasma and performed an alcohol content test using a Dupont ACA instrument. The test results revealed the sample of blood plasma had an alcohol level of 166.8 milligrams per deciliter (or .167%). When the officer received the test results, he placed Melton under arrest. He explained Melton's *Miranda* rights to him. Waiving these rights, Melton admitted he had consumed ten beers from 7:00 p.m. to 12:00 midnight.

At Melton's trial on August 2, 1991, he moved to suppress the test results absent proof of an acceptable conversion formula which would convert the test results into a whole blood percentage by weight. The court denied this motion and overruled his continuing objection to the admission of the test results.

In order to establish Melton's alcohol level, the State presented expert testimony from the medical technologist who administered Melton's blood test. He testified the test results of Melton's blood sample were 166.8 milligrams of alcohol per deciliter (or .167%). At the conclusion of the evidence, Melton moved for a directed verdict alleging the State wholly failed to offer any proof as to his percentage of blood alcohol by weight. After the court denied the motion, the jury found Melton guilty as charged. He appeals.

Melton contends the State did not present evidence sufficient to prove his blood alcohol content was .10%, or more. He urges when the State chooses to test a bodily substance for blood alcohol, the result must be expressed in a manner which indicates the percentage of alcohol, by weight, in the subject's whole blood. He cites *Shuman v. State* (1986), Ind.App., 489 N.E.2d 126, *reh. denied, trans. denied,* for the proposition the State must present to the jury expert testimony concerning conversion of the plasma test results into a whole blood percentage by weight.

To obtain a conviction under IC 9–11–2–1 (now IC 9–30–5–1), the State must prove the defendant operated a vehicle with ten-hundredths percent (.10%), or more, by weight of alcohol in his blood. In order to prove the .10%, or more, by weight of blood alcohol level (BAC), evidence of a defendant's blood alcohol content may be shown by chemical tests analyzing the defendant's breath, blood, urine, or other bodily substance. IC 9–11–4–15(a).[2]

In *Shuman* the State presented evidence of the results of the defendant's serum alcohol level to establish the charge of operating a motor vehicle while intoxicated resulting in the death of another. We approved the introduction of such evidence because the State also offered expert testimony as to the conversion of the serum test result into blood alcohol content. *Shuman,* 489 N.E.2d at 129; *see also Hayes v. State* (1987), Ind.App., 514 N.E.2d 332, 338, *reh. denied, trans. denied.* (*citing Shuman* on the same issue). We opined that while our legislature permits tests on vari-

---

**1.** Recodified as IC 9–30–5–1.

**2.** Recodified as IC 9–30–6–15.

ous bodily substances, in addition to whole blood, it has set the standard for intoxication in terms of weight of alcohol in the blood. Thus, the results obtained from the testing of the other bodily substances must be converted into the weight of alcohol in the whole blood. *Shuman*, 489 N.E.2d at 129.

■ Such expert testimony is a necessity because the alcohol content of whole blood is not the same as the alcohol content of either the plasma or serum portion of the blood, if either is separately tested. Stated simply, blood plasma, obtained by centrifuging the blood, is whole blood minus the cells. Blood serum, on the other hand, is whole blood with the clotting elements removed. E. Fitzgerald & D. Hume, *Intoxication Test Evidence—Criminal and Civil* (1987) § 4:12–14. Plasma or serum samples produce 18% to 20% higher alcohol content values than do whole blood samples. *Id.* § 4:12. A mathematical calculation is necessary to convert the result of a plasma test into a corresponding blood alcohol content result. *Id.*

■ In the instant case, the State in an effort to prove Melton was driving with a blood alcohol content of .10%, or greater, offered the medical technologist's testimony of Melton's test results. The medical technologist testified Melton's plasma sample contained .167 milligrams of alcohol per deciliter. He could not indicate what Melton's blood alcohol content by weight was despite intense questioning by the State and Melton.

While our statutes do not dictate in what form blood must be tested, only evidence of the amount of alcohol by weight in the person's blood can support a conviction of IC 9–11–2–1 (now IC 9–30–5–1). The record shows the State did not produce any evidence which would allow the factfinder to convert the result of the plasma test into an amount of alcohol by weight in the whole blood. In absence of evidence establishing he was operating a vehicle with .10%, or more, by weight, of alcohol in his blood, Melton's conviction cannot be sustained. There was a failure of proof as to one element of the crime charged, namely,

the weight of the alcohol in Melton's blood at the time.

Reversed.

MILLER and HOFFMAN, JJ., concur.